# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

# CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| Deborah MUNS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil No. 17-00587 (RBK) |
| CAMDEN COUNTY BOARD OF | : | |
| SOCIAL SERVICES, | : | **OPINION** |
| | : | |
| Defendant. | : | |
| | : | |

**KUGLER,** United States District Judge:

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. No. 37] dismissing Plaintiff Deborah Muns' Complaint [Doc. No. 1]. Plaintiff's Complaint includes four claims: interference with Plaintiff's Family and Medical Leave Act ("FMLA") rights (Count I); retaliation under the FMLA (Count II); age discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count III); and violation of the New Jersey Wage Payment and Collection Law ("NJWPCL") (Count IV). Plaintiff and her attorney have agreed to withdraw Count IV. For the reasons discussed in the following Opinion, the Court **GRANTS** the Motion for Summary Judgment with regard to Count I and Count II. The Court declines to exercise supplemental jurisdiction over Count III.

## I. FACTUAL BACKGROUND

This is a case about alleged FMLA interference and retaliation. Plaintiff Deborah Muns was born in 1957. Complaint ("Compl.") [Doc. No. 1] at ¶ 12. In 1978, she applied to work for the Camden County Board of Social Services ("CCBSS"). CCBSS first hired her as a Clerk Typist. *Id.* at ¶ 14. She took on several positions over the next thirty-seven years. From approximately 1997 until her retirement in December 2015, she worked as a Human Service Specialist II. Def. St. Mat'l Fact ("Def. SOMF") [Doc. No. 37-3] at ¶ 1.

During her final year at CCBSS, Plaintiff faced medical and familial challenges that led to her requesting leave. Her medical challenges trace back to in or around 2012, when she was diagnosed with Rheumatoid Arthritis. Compl. at ¶ 19. This condition caused her to suffer from severe joint pain, swelling, and stiffness. *Id.* at ¶ 20. Then, in January 2015, her mother unfortunately became ill and died. *Id.* at ¶¶ 21–24. In total, Plaintiff applied for FMLA leave four times in 2015. The Court considers the applications at issue below.

### 1. First FMLA Request: Care for Ill Mother

Plaintiff applied for and received FMLA leave on January 6, 2015 to care for her ill mother. Def. SOMF at ¶ 3. This period of FMLA leave permitted care for Plaintiff's mother until February 17, 2015. Just one day later, on January 7, 2015, Plaintiff's mother died. Pl. St. Mat'l Fact ("Pl. SOMF") [Doc. No. 39], ¶ 5. Her mother's passing ended her FMLA leave.[1]

Plaintiff then requested additional time away from work to mourn her mother's passing. CCBSS granted the bereavement request and provided Plaintiff additional time off. Plaintiff

---

[1] The parties admit that Plaintiff's mother's passing legally ended her entitlement to FMLA leave to care for her. Def. SOMF at ¶ 6.

remained away from work on approved bereavement until January 14, 2015.  *See* Dublin

Deposition ("Dublin Dep.") [Doc. No. 38-2], 95:4-7.  Plaintiff then used two accumulated sick

days and submitted a second FMLA request.  *Id*.


### 2.  Second FMLA Request: Attend to Mother's Estate

Plaintiff submitted a second request for FMLA leave and was denied on January 21,

2015.  *See* Muns Deposition ("Muns Dep.") [Doc. No. 37-4], 75:15-78:15.  In her application,

Plaintiff listed her now-deceased mother as the "family member for whom you will provide

care."  Def. Exhibit B, ("Second FMLA Request") [Doc. No. 37-5].  Plaintiff also provided a

description of the proposed "care" in her application.  *Id*.  Plaintiff wrote that "[she] was 'power

of attorney' to handle all of [her] mother's business and paperwork and all necessary decisions –

[she] was the only child able to look after [her] mother for reason being 2 of [her] siblings lived

out of town."  *Id*.

CCBSS ultimately denied this second FMLA request because "administering an estate is

not covered under FMLA/FLA."  Def. Exhibit C, ("Notice: Second FMLA Request") [Doc. No.

37-6].  Just four days later, Plaintiff submitted a third, and allegedly unrelated, application for

FMLA leave.


### 3.  Third FMLA Request: Leave Due to Rheumatoid Arthritis

On January 25, 2015, Plaintiff submitted a third request for FMLA leave for her own

"serious health condition" and was subsequently denied.  Def. Exhibit D, ("Third FMLA

Request") [Doc. No. 37-7].  This health condition rendered her "unable to perform the essential

functions of her job." *Id.* As such, she requested leave from January 20, 2015 through February 18, 2015. *Id.*

Plaintiff provided a certification from a health care provider to support her application. Dr. Pamela Traisak, a physician with a specialty in Rheumatology, certified that Plaintiff suffered from a "serious health condition" that required treatment and caused incapacity for a continuous period of time. Def. Exhibit E, Certification of Health Care Provider, ("Traisak Cert.") [Doc. No. 37-8]. Dr. Traisak indicated that Plaintiff has "severe arthritis in her lumbar spine and knees that causes pain and numbness and affects her ability to function. She has difficulty walking or standing. . . she also suffers from chronic inflammation in her eyes. . ." *Id.* Dr. Traisak estimated that Plaintiff's flare-ups, which prevented her from working, occurred one-to-two times every one-to-three months. The episodes also lasted two-to-three days. *Id.*

CCBSS doubted the validity of Dr. Traisak's certification for several reasons. First, Plaintiff had lived with Rheumatoid Arthritis since October 2012 and had never applied for FMLA leave. Second, and more importantly, CCBSS questioned the validity of her request because it "came so quickly on the heels of her being denied leave to handle her mother's estate." Def. SOMF at ¶¶ 14, 16. As such, CCBSS arranged for a second medical opinion from Dr. Tim Pinsky.

Dr. Pinsky examined Plaintiff on February 3, 2015, and Plaintiff discussed her job duties at this appointment. *Id.* at ¶ 18. While awaiting the results of the second medical opinion, Plaintiff took vacation time from January 20th through February 6th. Dublin Dep. at 95:8-9.

On February 5, 2015, CCBSS notified Plaintiff that her third request for FMLA leave was denied based upon the results of Dr. Pinsky's examination. Def. SOMF at ¶ 20. Dr. Pinsky determined that there was no medical necessity to justify Plaintiff's FMLA request because her

CCBSS position was sedentary and her normal job duties could thus be performed even with her arthritic condition. *Id.* at ¶ 21. The letter further instructed Plaintiff to return to work on February 9, 2015.

**4. Fourth FMLA Request: Intermittent/Reduced Work Week Due to Rheumatoid Arthritis**

On February 12, 2015, Plaintiff submitted a fourth request for FMLA leave on an intermittent basis for her serious health condition and was subsequently denied leave. Def. Exhibit I, ("Fourth FMLA Request") [Doc. No. 37-12]. In that request, Plaintiff sought intermittent leave until August 13, 2015. Def. Exhibit J, ("Fourth FMLA Request Certification") [Doc. No. 37-13]. Again, she included a certification from Dr. Traisak. *Id.*

CCBSS denied this request on February 23, 2015 based upon the results of Dr. Pinsky's examination. Def. Exhibit K ("Denial: Fourth FMLA Request") [Doc. No. 37-14]. The letter indicated that Dr. Pinsky "found that since the essential responsibilities of [her] job are sedentary and that he did not detect any new or progressing medical conditions, there was nothing to preclude [her] from attendance at work on a full-time basis." *Id.*

On February 24, 2015, Plaintiff requested that CCBSS seek a third medical opinion regarding her FMLA leave eligibility. Def. Exhibit L ("Third Opinion Request") [Doc. No. 37-15]. Plaintiff understood that the third examination was the last and binding opinion concerning her leave eligibility. Def. SOMF at ¶ 30. She was granted provisional leave pending the outcome of the third opinion. Pl. SOMF at ¶ 32.

On March 26, 2015, Plaintiff emailed Ronalda Dublin, Defendant's Senior Personnel Technician, and asked if the days she had missed due to her medical condition qualified for

provisional FMLA leave.  Pl. Exhibit D, Request for Provisional Leave ("Provisional Leave Request)" [Doc. No. 38-3].  Dublin responded that she could use provisional leave while waiting for the results of the third medical opinion.  Pl. Exhibit E, Response to Request for Provisional Leave ("Provisional Leave Response") [Doc. No. 38-3].

On or about April 10, 2015, Plaintiff attended an evaluation with a third physician, Dr. Barr.  On May 14, 2015, Plaintiff received a letter that stated, "Dr. Barr determined that, although [she] does have medical issues, based on the job duties that [she] described to him, and the results of his examination, he did not see any reason why [Plaintiff] cannot continue to work without restrictions."  Def. Exhibit N ("Intermittent Leave Denial") [Doc. No. 37-17].  Dr. Barr's evaluation was binding upon Plaintiff.  Further, the evaluation terminated Plaintiff's pending requests for FMLA leave.  Pl. SOMF at ¶ 34.

## II.  PROCEDURAL HISTORY

On January 27, 2017, Plaintiff filed a Complaint [Doc. No. 1] in this Court alleging various causes of action arising from the facts above.  Specifically, she claims that Defendant interfered with her FMLA rights (Count I), retaliated against her for attempting to exercise her FMLA rights (Count II), discriminated against her because of her age (Count III), and refused to pay her all the sick time she had accumulated during her employment (Count IV).

Defendant Camden County Board of Social Services ("CCBSS") now moves for Summary Judgement on Plaintiff's interference and discrimination claims.  Defendant argues that Plaintiff's interference claim fails as a matter of law because the regulation that governs an employer's right to seek a second medical opinion (29 U.S.C. § 2613(c)(1)) does not impose a reasonableness requirement.  Defendant also argues that any interference resulting from alleged

violations of the FMLA's regulations fails as a matter of law because the undisputed facts demonstrate that Plaintiff was not prejudiced in any way.

Plaintiff directs the Court to five specific occasions to support her claim that Defendant CCBSS violated her FMLA rights: (1) when Defendant required a second medical opinion and subsequently denied Plaintiff's third request for FMLA leave, (2) when Defendant denied Plaintiff's fourth request for intermittent FMLA leave, (3) when Defendant failed to grant Plaintiff provisional leave pending the outcome of the second and third medical opinions, (4) when Defendant failed to provide Plaintiff with a copy of the second medical report, and (5) when Defendant failed to reimburse Plaintiff for travel expenses acquired in attending required medical appointments.

## III. LEGAL STANDARD

### 1. Summary Judgment

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility

determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## 2. 29 U.S.C. § 2601: The Family Medical Leave Act ("FMLA")

The FMLA is designed to balance the demands of the workplace with the needs of families in a manner that will minimize gender discrimination and ensure that leave is available for compelling medical and family needs. *See* 29 U.S.C. § 2601(b). The FMLA is meant, in part, "to entitle employees to take reasonable leave for medical reasons." *Id.* § 2601(b)(2).

Under Section 2612, an eligible employee may take up to twelve weeks of unpaid leave within a twelve-month period for any of the following reasons: (a) because of the birth of a son or daughter and the need to care for such son or daughter, (b) because of the placement of a son or daughter with the employee through adoption or foster care, (c) because of the need to care for a spouse, parent, or child with a serious health condition, or (d) because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. *Id.* § 2612(a)(1). A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves — (a) inpatient care in a hospital, hospice, or

residential medical care facility; or (b) continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

The FMLA also provides protection to employers who doubt the authenticity of an employee's leave request. Specifically, 29 U.S.C. § 2613(c)(1) states that "[i]n any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) … the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer …" While this second opinion is pending, the employee is provisionally entitled to the benefits of the FMLA. If, however, the medical certifications do not ultimately confirm the employee's entitlement to FMLA leave, "the leave shall not be designated as FMLA leave and may be treated as paid or unpaid leave under the employer's established leave policies." 29 U.S.C. § 825.307(b)(1). If the first and second medical opinions differ, employers can also require a third medical opinion. This third opinion, which must be designated or approved jointly by the employer and the employee, is <u>final and binding</u>. 29 U.S.C. § 825.307(c) (emphasis added).

### 3. 29 U.S.C. § 2615: FMLA Interference

The FMLA creates two distinct claims, *i.e.*, interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the Act, and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the Act. Family and Medical Leave Act of 1993 § 105, 29 U.S.C. § 2615(a)(1)-(2). Plaintiff asserts an interference claim and abandons her retaliation claim.

There are two types of interference that are prohibited under the FMLA: (a) interference with rights, and (b) interference with proceedings or inquiries. 29 U.S.C. § 2615. At issue in this case is the first type — interference with rights. Under 29 U.S.C. § 2615(a)(1), it is illegal "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." And under 29 U.S.C. § 2615(a)(2), it is illegal "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

The Code of Federal Regulations provides additional insight regarding what actions constitute interference. 29 C.F.R. § 825.220(b) states that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." The CFR then provides examples, including "refusing to authorize FMLA leave … discouraging an employee from using such leave … [and] manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). Ultimately, employers cannot "discriminat[e] or retaliate[e] against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

An interference claim under § 2615(a)(1) is "not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 120 (3d Cir. 2005). To prevail on an FMLA interference claim, the plaintiff must show that (1) the plaintiff was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she

was entitled under the FMLA." *Capps v. Mondelez Global, LLC,* 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014)).

Importantly, a plaintiff can only recover on an interference claim if she has been prejudiced by the violation. *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002) (emphasis added). An employer who interferes with an employee's rights under the FMLA shall be liable for damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" (29 U.S.C. § 2617(a)(1)(A)(i)(I)), "any actual monetary losses sustained by the employee as a direct result of the violation" (29 U.S.C. § 2617(a)(1)(A)(i)(II)), or "equitable relief as may be appropriate, including employment, reinstatement, and promotion" (29 U.S.C. § 2617(a)(1)(B)).

## IV. DISCUSSION

The Court now considers Plaintiff's specific arguments that CCBSS interfered with her rights under the FMLA. As an initial matter, the Court makes three observations regarding the interference claim at issue: (1) FMLA leave requests for rheumatoid arthritis are relatively uncommon; (2) FMLA leave requests before this Court are often for more serious medical conditions; and (3) the Defendants here appear to have acted in good faith.

Of the approximately five hundred Third Circuit summary judgment opinions that discuss interference under the FMLA, only three specifically mention rheumatoid arthritis. *See Atchison v. Sears*, 666 F. Supp. 2d. 477 (E.D. Pa. 2009) (finding that employee's interference claim failed because the decision to terminate employee was made before employee formally requested and was granted FMLA leave for his rheumatoid arthritis); *Seeney v. Pennsylvania, Dep't of Corr., SCI-Graterford*, 31 F. Supp. 3d 677 (E.D. Pa. 2014) (denying summary judgment on FMLA

interference claim because defendant's argument — that employee was ineligible for FMLA benefits in the first place — was incorrect); *Panto v. Palmer Dialysis Ctr./Total Renal Care,* No. Civ. A. 01-6013, 2003 WL 1818990 (E.D. Pa. Apr. 7, 2003) (granting summary judgment on FMLA interference claim because employee was not eligible for FMLA benefits). None of these cases provide much instruction to the Court on the issues here.

Furthermore, the "serious health conditions" for which employers grant FMLA leave are typically more serious than rheumatoid arthritis. This Court is aware of employers granting FMLA leave for an employee to care for a child with a chronic heart condition that required frequent medical appointments and care (*Griffith v. PNC Bank*, No. Civ. 13-5407 RBK/KMW, 2015 WL 2400222, at *4 (D.N.J. May 20, 2015)), as a result of a car accident, the birth of a child, and a child's diagnosis of autism spectrum disorder, anxiety, and sleep disturbance (*Gill v. BH Media Grp., Inc.,* No. CV 16-9155 (RBK), 2019 WL 585427, at *1-2 (D.N.J. Feb. 13, 2019), and as a result of suffering an acute heart attack and undergoing emergent cardiac catheterization and angioplasty (*Walters v. Carson*, No. Civ. 11-6545 RBK/AMD, 2013 WL 6734257, at *2 (D.N.J. Dec. 19, 2013).

Finally, the Court also notes that Defendant has generally demonstrated good faith throughout its interactions with Plaintiff. Plaintiff was granted FMLA leave previously when she was *properly entitled* to it (to care for her ill mother). Def. SOMF at ¶ 3. Defendant also granted Plaintiff a period of bereavement following her mother's passing. *Id.* at ¶ 9. And when Plaintiff had conflicts in scheduling her medical appointments, Defendant was flexible: "We did try to accommodate, you know, if she was not available, then we just tried to schedule according to when she would be available." Dublin Dep. at 111:2-6.

1. **Plaintiff's Interference Claim (Count I)**

Plaintiff claims that Defendant interfered with her rights under the FMLA on five separate occasions: (1) when Defendant required a second medical opinion and subsequently denied Plaintiff's third request for FMLA leave, (2) when Defendant denied Plaintiff's fourth request for intermittent FMLA leave, (3) when Defendant failed to grant Plaintiff provisional leave pending the outcome of the second and third medical opinions, (4) when Defendant failed to provide Plaintiff with a copy of the second medical report, and (5) when Defendant failed to reimburse Plaintiff for travel expenses acquired in attending required medical appointments. The Court considers these arguments in turn.

### A. Whether CCBSS Interfered with Plaintiff's FMLA Rights in Denying the Third Request for Leave

Plaintiff essentially makes two arguments to challenge CCBSS's denial of her third request for FMLA leave. First, Plaintiff argues that CCBSS interfered with her FMLA rights by requiring a second medical opinion. Second, she makes a related argument that an employer may only require a second opinion if it has a "reasonable" basis to question the first medical certification.

Plaintiff's first argument fails because the law clearly permits an employer to require a second medical opinion. Specifically, 29 U.S.C. § 2613 governs the requirements for medical certifications provided by health care providers in support of an employee's request for FMLA leave. Looking at the entirety of the statute, the Court notes that it gives employers a great deal of discretion. 29 U.S.C. § 2613(a) states that "[a]n employer *may* request that a request for leave … be supported by a certification issued by the health care provider …" (emphasis added). Furthermore, if an employer believes that an employee's request for FMLA leave is authentic

and valid, they do not have to require additional certification from a physician. 29 U.S.C. § 2613(c)(1) states that "[i]n *any* case in which the employer has reason to doubt the validity of the certification provided under subsection (a) … the employer may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer …" (emphasis added).

This Court's plain reading of the statute shows no qualifications or requirements on the circumstances under which an employer may require a second opinion. On the contrary, it specifies that an employer has this right "[i]n *any* case." Further, while the Third Circuit has not addressed this issue directly, the Fourth Circuit has held that an employer has a right to request a second medical opinion when it doubts the "validity," not the "authenticity," of a medical certification. *See Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (stating that "[e]mployers may order a second or third medical evaluation out of concern that the original certification of a serious medical condition is *invalid*, not that it is *inauthentic*"). The Court therefore rejects Plaintiff's argument that CCBSS was wrong to require a second medical certification.

Plaintiff's second argument that 29 U.S.C. § 2613 has a "reasonableness" standard is also misleading. Plaintiff seems to suggest that CCBSS interfered with her FMLA rights because it had "no reasonable basis" to question the certification of Dr. Traisak. Plaintiff argues that the employer's doubt must be reasonable: "the record reveals disputed issues of fact as to whether Defendant's suspicions were reasonable and whether it should have required Plaintiff to undergo an examination for a second opinion." Pl. Br. at 8-9.

A plain text reading of 29 U.S.C. § 2613 simply makes no mention that an employer's "reason for doubt[ing]" the validity of a medical certification must be "reasonable." This

absence is noteworthy given that the statute mentions "reasonableness" elsewhere. *See* 29 U.S.C. § 2613(e) (discussing re-certification of a previously certified doctor) ("[t]he employer may require that the eligible employee obtain subsequent recertifications on a *reasonable* basis" (emphasis added)). By viewing 2613(c) alongside 2613(e), Congress made its intent clear: the former states "reason to doubt" and the latter states "reasonable basis." The standard governing a second certification clearly differs from the one governing re-certification, or else subsection (c) and (e) would have applied the same language.

Moreover, the Code of Federal Regulation indicates that an employer may require a second certification if he or she has "reason to doubt." *See* 29 C.F.R. § 825.307(b) ("[a]n employer who has *reason to doubt* the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense" (emphasis added)). Likewise, 29 C.F.R. § 825.307(e) mentions "reasonable 'out of pocket' travel expenses." The fact that "reasonableness" appears elsewhere in both 29 U.S.C. § 2613 and 29 C.F.R. § 825.307 is telling; it shows that the drafters did not intend to impose a requirement of "reasonableness" on employers who require a second medical opinion. The Court therefore rejects Plaintiff's argument that a "reasonableness" standard is required under 29 U.S.C. § 2613(c).

Having dismissed Plaintiff's main arguments, the central question now becomes whether CCBSS had *reason* to doubt the validity of the first medical certification. Defendants argue that it had not one, but two "reasons to doubt" the validity of Plaintiff's medical certification: (1) Plaintiff's third request for leave (for her rheumatoid arthritis) "came on the heels of" CCBSS' denial of her second request for leave to administer her mother's estate, and (2) Plaintiff had never before requested FMLA leave for her rheumatoid arthritis despite having had the disease for a number of years. CCBSS therefore questioned the validity of Dr. Traisak's certification.

The Court agrees that the close proximity of the applications qualifies as "reason to doubt" under Section 2613(c). Regardless of why Plaintiff claims she submitted the third FMLA request, the timing seemed suspicious. The second request (to handle her mother's estate) was denied on January 21, 2015 (Notice: Second FMLA Request), and she submitted her third request (for her own serious medical condition) just four days later, on January 25, 2015 (Third FMLA Request). Moreover, in her deposition, Dublin stated that "…the original request began to care for her mother. When she requested the time then for herself at that same time, it was questionable." Dublin Dep. at 60:9-12. From an employer's perspective, this certainly qualifies as a "reason to doubt" the validity of Plaintiff's medical certification.

Finally, the Court rejects Plaintiff's broader argument that she was entitled to FMLA leave. Plaintiff claims that a rational jury could find that she established all five elements of a successful interference claim. She has certainly satisfied the first element (Plaintiff was an eligible employee under the FMLA), the second element (Defendant was subject to the FMLA's requirements), and the fourth element (Plaintiff gave notice to the Defendant of her intention to take FMLA leave). However, no reasonable jury could find that the third element (Plaintiff was *entitled* to FMLA leave) and the fifth element (Plaintiff was denied benefits to which she was *entitled* under the FMLA) are satisfied.

The evidence produced, as explained above, is simply insufficient to show any genuine question of material fact regarding the denial of her third FMLA request. Thus, Defendant is correct that "Plaintiff was not medically qualified to take any FMLA, [so] there were no rights against which CCBSS could interfere." Def.'s Br. at 10. *See Callison v. City of Phila.*, 420 F.3d 117, 119 (3d Cir. 2005) ("In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied

them.").  This Court therefore rejects Plaintiff's argument that requiring a second medical certification and subsequently denying Plaintiff's third request for FMLA leave interfered with her rights under the FMLA.

### B.  Whether CCBSS Interfered with Plaintiff's FMLA Rights in Other Instances

Plaintiff claims that Defendant interfered with her FMLA rights on four other occasions: (1) when it denied her fourth request for intermittent leave, (2) when it failed to grant provisional leave pending the outcome of the second and third medical opinions, and (3) when it failed to provide her with a copy of the second medical report, and (4) when it failed to inform her that she was entitled to reimbursement for travel expenses. For the reasons set forth below, the Court finds that Defendant did not interfere with Plaintiff's FMLA rights in any of these instances.

### a.  Whether CCBSS Interfered with Plaintiff's FMLA Rights in Denying the Fourth Request for Intermittent Leave

Plaintiff argues that Defendant wrongfully relied on Dr. Pinsky's second medical opinion in denying her fourth request for intermittent leave.  Pl. Br. at 10.  She claims that her request for intermittent leave was different from her request for continuous leave and introduced a new element in the form of needing rest from computer work and from standing and walking.  *Id*. However, Dr. Pinsky's report found that "there was nothing to preclude [her] from attendance at work on a full-time basis."  Denial: Fourth FMLA Request.  Plaintiff met with Dr. Pinsky on February 3, 2015 and submitted her request for intermittent leave just nine days later on February 12, 2015.  Def. Exhibit H, Denial of Muns' Third FMLA Request ("Denial: Third FMLA

Request"), [Doc. No. 37-11]; Fourth FMLA Request. Plaintiff's argument seems to rely on the premise that Plaintiff's medical condition had changed during those nine days, making Dr. Pinsky's opinion that she could work on a full-time basis no longer valid. The Court is of the opinion that no rational jury could agree with this argument. Therefore, the Court concludes that Defendant did not interfere with Plaintiff's FMLA rights by denying her fourth request for intermittent leave.

### b. Whether CCBSS Interfered with Plaintiff's FMLA Rights in Failing to Grant Provisional Leave

Plaintiff argues that Defendant interfered with her FMLA rights by failing to grant her provisional leave pending the outcome of the second and third medical opinions. Plaintiff was technically allowed to miss work (and paid for her time off), but the days were not officially coded as FMLA-approved. Dublin Dep. at 115:14-19; 135:21 to 136:5. The Court finds Plaintiff's argument unavailing for several reasons. First, Plaintiff appears to infer that because employers are required to inform their employees that they are entitled to 12 weeks of unpaid FMLA leave, they are also required to inform them that they are provisionally entitled to this leave while awaiting the outcome of medical opinions. But Plaintiff provides no support for this argument. To the contrary, 29 C.F.R. § 825.300 imposes three types of notice requirements on employers: (1) general notice, (2) eligibility notice, and (3) rights and responsibilities notice.[2]

---

[2] Plaintiff cites three cases supporting the proposition that a violation of the FMLA's notice requirements constitutes interference. However, these cases are fundamentally different from the instance case because (1) the employees in those cases were actually *entitled* to FMLA benefits and subsequently terminated from employment, and (2) they address the violation of an *explicit provision* of the FMLA. The employer's actions in *Conoshenti* and *Ruder* violated the requirements for eligibility notice under 29 C.F.R. § 825.300 ("…[w]hen the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days…"), while the employer's actions in *Hansler* violated the FMLA's certification requirements under 29 C.F.R. § 825.305 ("[t]he employer must provide the employee with seven calendar days … to cure any such deficiency"). *See Conoshenti v. Public Service*

Crucially, this statute does not impute FMLA notice requirements on an employer with respect to *provisional* leave. Instead, the statute at issue merely states that an employer is expected to "responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R. 825.300(C)(5).

The record shows that CCBSS "responsively answere[ed] questions" and acted in good faith. For example, Plaintiff had emailed Dublin on March 26, 2015 asking if the days she had missed due to her medical condition qualified for provisional FMLA leave. Provisional Leave Request. Dublin responded less than twenty-four hours later that she would "look into it and get back to you." *Id.* Dublin spoke with an attorney and on March 30, 2015 (just four days later) responded that Plaintiff could use provisional leave while waiting for the results of the third medical opinion. Provisional Leave Response.

Even if the FMLA did contain an explicit notice requirement regarding provisional leave, Plaintiff's argument would still fail because she was not prejudiced by Defendant's actions. *See Ragsdale* at 89. This Court is simply unpersuaded by Plaintiff's argument that Defendant's failure to officially code her provisional leave as FMLA-approved caused her any cognizable harm or injury. The Court further rejects the argument that she "may have structured her time off differently had she known her absences would have been FMLA protected." Pl. Br. at 13.

As Plaintiff points out, a failure to advise an employee of her rights under the FMLA establishes an interference claim when the employee is unable to exercise his rights under the statute "in a meaningful way." *Conoshenti*, 364 F.3d at 143. The FMLA requires the provision of twelve weeks of *unpaid* leave (Def. Reply Br. at 6), and Plaintiff was provisionally entitled to

---

*Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004); *Ruder v. Pequea Valley School Dist.,* 790 F.Supp.2d 377 (E.D. Pa. 2011); *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 154 (3d Cir. 2015). Here, Defendant's actions did not violate an *explicit* requirement or provision of the FMLA.

this leave pending the outcome of the second and third medical opinions. As Dublin stated in her deposition, "[when an employee goes on FMLA leave, you're] still getting charged for the time, it's just charged to FMLA. FMLA protects you from disciplinary action. It does not excuse you from using your time." Dublin Dep. at 197:1-5.

Based on the Court's understanding of Defendant's leave policies and the FMLA, Plaintiff could have used personal days, vacation time, sick time, or unpaid time while awaiting the second and third medical opinions. Designating the days she took off as FMLA-protected would have shielded her from disciplinary action, but would not have impacted how the days were coded. Not only was Plaintiff allowed to be out of work, but her time out of work was *paid*. Def. Reply Br. at 6. Therefore, had Dr. Pinsky provided a report in her favor, she would still have been entitled to her full allotment of FMLA time — 12 weeks of *unpaid* leave. *Id.* at 7.

Plaintiff's argument is further weakened by CCBSS's right to require a second medical opinion. As the regulation makes clear, "[i]f the [medical] certifications do not ultimately establish the employee's entitlement to FMLA leave, the leave shall not be designated as FMLA leave and may be treated as paid or unpaid leave under the employer's established leave policies." C.F.R. § 825.307(b)(1). Thus, because the certifications did not establish Plaintiff's entitlement to FMLA leave, CCBSS was entitled to treat the leave as paid or unpaid under its policies. The "error" of not officially coding Plaintiff's time off as "FMLA-approved" appears, at best, to be a distinction without a difference. Defendant therefore did not interfere with Plaintiff's rights by failing to initially code her provisional leave as FMLA-approved.

**c.  Whether CCBSS Interfered with Plaintiff's FMLA Rights in Failing to Provide a Copy of the Medical Report**

Plaintiff also claims that Defendant interfered with her FMLA rights by failing to provide her with a copy of Dr. Pinsky's report within five (5) business days after she requested it as required by 29 C.F.R. § 825.307(d).  Pl. Br. at 16.  Plaintiff sent a letter to Defendant on February 24, 2015 requesting a copy of the report (Pl. Exhibit C, Letter Requesting Copy of Dr. Pinsky's Report ("Request for Copy of Medical Report") [Doc. No. 38-3]) but never received a response (Muns Dep. 113:6-8).  Plaintiff then asked Sittner, Dublin's supervisor, for a copy of the report *in-person*, but Sittner declined Plaintiff's request, stating something along the lines of "we don't have to give it to you because we paid for it."  Muns Dep. at 113:14-15.  Dublin explained that she was advised not to give Plaintiff a copy of the report because Defendant paid for the examination.  Dublin Dep. at 155:5-16.

Plaintiff does not cite any case law in which a court has found that an employer's failure to provide an employee with a copy of a medical report constituted FMLA interference.  Plaintiff seems to suggest that she was prejudiced by Defendant's actions because she "may have worded her request for leave differently had she seen the report and Dr. Pinsky's findings."  Pl. Br. at 17.  Presumably Plaintiff is referring to her fourth request for intermittent FMLA leave.  However, she submitted this fourth request on February 12, 2015 (Fourth FMLA Request), twelve days before she officially requested a copy of Dr. Pinsky's report.

While it does appear that Defendant violated the FMLA regulations by not providing Plaintiff with a copy of the medical report within five (5) business days, this Court fails to see how not having the medical report prejudiced Plaintiff *in a meaningful way*.  It did not stop her from exercising her right to obtain a third opinion.  Def. Reply Br. at 8.  Therefore, the Court concludes that Defendant did not interfere with Plaintiff's FMLA rights by failing to provide her with a copy of the medical report within five (5) business days.

### d. Whether CCBSS Interfered with Plaintiff's FMLA Rights in Failing to Provide Travel Expense Reimbursement

Plaintiff's final claim is that Defendant interfered with her FMLA rights by failing to reimburse her for expenses associated with her medical examinations. Pl. Br. at 17. Under C.F.R. § 825.307(e), if an employer requires an employee to obtain a second or third medical opinion, the employer must reimburse the employee for any "reasonable 'out of pocket' travel expenses" incurred in obtaining the second and third medical opinions. The IRS has published the amount that can be claimed for mileage, which is 58 cents per mile. IR- 2018-251 (I.R.S.), 2018 WL 6695856.

Plaintiff claims that she traveled "maybe ten" miles to get to her second medical appointment. Muns Dep. at 96:20. At the time of her appointment, she was not aware that she was entitled to travel expense reimbursement, so she did not request it. *Id.* at 97:1-8. When she became aware "somewhere down the line," she did not go back to CCBSS and request reimbursement. *Id.* at 7-11. Dublin stated in her deposition that "[Plaintiff was not] entitled to reimbursement for any expenses incurred in getting to the appointment … [because the] agency does not — didn't pay for transportation or they did not reimburse for transportation." Dublin Dep. at 111:10-19. She also stated that "[there was no] process in place to submit expenses if an employee was looking to get reimbursed." *Id.* at 112:1-8. Plaintiff claims that "[t]his refusal to reimburse violated the plain language of the regulations and constituted an interference violation." Pl. Br. at 18.

Again, Plaintiff does not cite any case law in which a court has found that an employer's failure to reimburse an employee for travel expenses associated with required medical

examinations constituted FMLA interference. Nor does Plaintiff cite any cases that address the question whether an employer has an affirmative duty to offer travel reimbursement when the employee fails to request such reimbursement. It appears that no other federal court has addressed this issue.

The only evidence on the record showing that Plaintiff was prejudiced comes from the violation itself, suggesting that Defendant would be liable to Plaintiff for the amount of travel expenses incurred. *See* 29 U.S.C. § 2617(a)(1)(A)(i)(I) (an employer who commits interference is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation"). However, Plaintiff was never actually denied travel reimbursement because she never requested it in the first place. When she learned of her entitlement, she did not reach out to her employer and request reimbursement. Rather, she waited until the instant action to bring up the issue. She only traveled ten miles to her second appointment, and the record does not state how far she traveled to her third appointment. Thus, the expenses she incurred are undoubtedly negligible — at 58 cents per mile, Plaintiff would be entitled to no more than $5.80 for her second appointment. The Court concludes that Plaintiff was not was not prevented from exercising her rights under the FMLA *in a meaningful way*. *Conoshenti*, 364 F.3d at 143. Therefore, Defendant did not interfere with her FMLA rights by failing to inform her she was entitled to travel expense reimbursement.

## 2. Plaintiff Abandons FMLA Retaliation Claim (Count II)

Plaintiff does not address her retaliation claim in her brief, leading the Court to conclude that she has abandoned it. She does not direct the Court to any evidence supporting a claim of retaliation. Nor does she respond to Defendant's argument that Plaintiff is unable to show that

she suffered an adverse employment action as a result of exercising her FMLA rights.  Def. Br. at 12.  Accordingly, the Court grants summary judgment to CCBSS on the retaliation claim.  *See Wurtzbacher v. Winslow Twp.,* No. CV 17-05026, 2019 WL 1238825, at *6 (D.N.J. Mar. 18, 2019) (granting summary judgment when the plaintiff appeared to abandon a claim by making no argument on the issue in opposition to a motion for summary judgment).

### 3.  The Court Declines to Exercise Supplemental Jurisdiction Over Remaining State Law Claims (Counts III and IV)

Plaintiff also brings a discrimination claim under the New Jersey Law Against Discrimination ("NJLAD") and alleges a violation of the New Jersey Wage Payment and Collection Law ("NJWPCL").  At her deposition, Plaintiff and her attorney agreed to withdraw the NJWPCL claim (Def. SOMF at ¶ 39), but the NJLAD claim remains.  Plaintiff claims that Defendant unlawfully considered her age when it doubted the validity of her doctor's certification and required her to obtain a second opinion.  Pl. Br. at 19.  Defendant responds that it had a legitimate reason for requiring Plaintiff to obtain a second opinion. *Id.* at 20. Plaintiff maintains that these reasons were pretextual. *Id.*

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Plaintiff's only claims under federal law have been dismissed, and there is no affirmative justification for this Court to retain supplemental jurisdiction over the state law claim this early

in the litigation.  As such, the Court declines to exercise supplemental jurisdiction pursuant to 28

U.S.C. § 1367(c)(3).  The remaining Counts are therefore dismissed without prejudice.


**V.   CONCLUSION**

For the reasons discussed above, this Court **GRANTS** Defendant's Motion for Summary

Judgment.  A corresponding Order will follow.


Dated: 07/17/2019                                                              s/ Robert B. Kugler

                                                                                      ROBERT B. KUGLER

                                                                                      United States District Judge